An appropriate order follows.

**UNITED STATES of America**

v.

**Chaka FATTAH, Sr., et al.**

**CRIMINAL ACTION NO. 15–346**

United States District Court,
E.D. Pennsylvania.

Signed January 27, 2016

---

Paul L. Gray, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

## MEMORANDUM

Bartle, District Judge

Before the court is the motion of Kevin Mincey, Thomas Fitzpatrick, Riley Ross and Shabrei Parker, counsel for defendant Congressman Chaka Fattah, Sr. ("Fattah"), to withdraw from their representation of him in this criminal action on the ground that he has failed to honor his obligations to pay their fees.[1]

Fattah and four others have been indicted in a 29–count, 85–page indictment. They are all charged with conspiracy to commit racketeering in violation of 18 U.S.C. § 1962 as well as a number of other offenses. In addition to the racketeering conspiracy, Fattah is named in counts charging him with: conspiracy to commit wire fraud (18 U.S.C. §§ 1343 and 1349); conspiracy to commit honest services wire fraud (18 U.S.C. §§ 1343, 1346, and 1349); conspiracy to commit mail fraud (18 U.S. §§ 1341 and 1349); mail fraud (18 U.S.C. § 1341); six offenses of falsification of records (18 U.S.C. §§ 1519 and 2); conspiracy to commit bribery (18 U.S.C. § 371); bribery (18 U.S.C. § 201(b)(2)); bank fraud (18 U.S.C. §§ 1344 and 2); making false statements to financial institutions (18 U.S.C. §§ 1014 and 2); money laundering (18 U.S.C. §§ 1957 and 2); and money laundering conspiracy (18 U.S.C. § 1956(h)).

---

**1.** Kevin V. Mincey and Thomas O. Fitzpatrick are partners in the firm of Mincey & Fitzpatrick. Riley H. Ross has a separate law practice although his address is the same as that of Mincey & Fitzpatrick. Shabrei Parker is Of Counsel at Mincey & Fitzpatrick.

The indictment was handed down by the Grand Jury on July 29, 2015. Three of the four counsel for defendant who seek to withdraw entered their appearances on the docket in mid-August 2015. Ms. Parker entered her appearance shortly thereafter on September 10, 2015.

At a pretrial conference on August 20, 2015, the Government notified the court it was providing forthwith extensive discovery in electronic form to all the defendants, including *Jencks* material encompassed under 28 U.S.C. § 3500. The court has been advised that the discovery consists of 900,000 pages of material. Counsel for all defendants requested and the court granted them until December 17, 2015 to file pretrial motions in light of the volume of discovery that needed to be reviewed. Due to the complexity of the matter and the schedules of defense counsel, the court set other pretrial deadlines for early and mid-April 2016 and specially listed the trial to begin on May 2, 2016.

The court held a second pretrial conference on December 10, 2015. At that time, counsel for all defendants requested additional time to digest the discovery and to file pretrial motions. The court found the request to be reasonable and extended the deadline for such motions until January 15, 2016. With no objection, it left in place all other deadlines, including the May 2, 2016 trial date. The pretrial motions of all defendants were timely filed on January 15, 2016. Included were 11 motions of Fattah.

Five days later, on January 20, 2016, counsel for Fattah filed their motion to withdraw from their representation, together with a motion to file the papers ex parte and under seal. Finding no reason why the motion to withdraw should not be publicly available, the court denied, on January 21, the motion to keep the matter secret. A hearing on the motion to with-draw, at which Fattah was present, was held on January 26.

Rule 44.1 of the Local Criminal Rules of this court states in relevant part:

[The] appearance [of a lawyer representing a defendant in any criminal proceeding] shall constitute a representation to the Court that counsel so appearing shall represent the defendant until final disposition of the case in this Court. No appearances may be withdrawn except by leave of Court.

Under Local Rule 44.1, any lawyer entering an appearance for a criminal defendant in this Court understands that the representation continues "until final disposition of the case in this Court" and that there is no right of withdrawal in mid-stream "except by leave of Court."

▊ Thus, a lawyer is on notice that when undertaking representation of a criminal defendant he or she assumes a personal financial risk if not paid in advance. In deciding whether to agree to represent a client, any prudent attorney will analyze the complexity and duration of the matter and determine at the outset the financial arrangement and fees and expenses to be required. Counsel for Fattah did all of this.

Counsel for Fattah made a judgment that Fattah would be good for their fees and expenses on an ongoing basis as he agreed. They were also persuaded to take on this case because of its high profile. From a review of the indictment and early discussions with the Government, they acknowledged they were well aware at the outset that the case was likely to involve voluminous discovery, extensive motion practice, and a trial of six to eight weeks just for the Government's case. They clearly entered their appearances with their eyes open and knew that this was going to be an expensive and time consum-

ing matter. They do not and cannot claim surprise.

Counsel for Fattah cite to Rule 1.16(b) of the Pennsylvania Rules of Professional Conduct. That rule provides in relevant part that a lawyer may withdraw from representing a client if "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled" or if "the representation will result in an unreasonable financial burden on the lawyer." The termination of representation, however, is subject to court approval under Rule 1.16(c). To the extent that Rule 1.16(b) conflicts with Local Criminal Rule 44.1, the latter, of course, controls.[2]

■ We recognize that there are cases which have allowed lawyers to withdraw their appearances on the ground that the client has failed to pay agreed-upon fees and expenses. These are usually civil cases. See, e.g., Buschmeier v. G & G Invs., Inc., 222 Fed.Appx. 160, 164 (3d Cir.2007); Reynolds v. Driscoll Mach., Inc., Nos. 89–3536 & 91–2766, 1991 WL 175467, at *1 (E.D.Pa. Sept. 4, 1991). At least in a criminal case, "[n]on-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." U.S. v. Parker, 439 F.3d 81, 104 (2d Cir.2006) (citation omitted); U.S. v. Heron, 513 F.Supp.2d 393, 398 (E.D.Pa.2007). Ultimately, the decision whether to allow withdrawal is within the sound discretion of the court. Ohntrup v. Firearms Center, Inc., 802 F.2d 676, 679 (3d Cir.1986).

■ In resolving the pending motion, the court must weigh the reasons for which counsel seeks to withdraw, the prejudice to the client and other litigants, the harm to the administration of justice, and delay in the resolution of the matter. See, e.g., Taylor v. Stewart, 20 F.Supp.2d 882, 883 (E.D.Pa.1998). Our Court of Appeals has cautioned that in making our analysis we must not fail to take into account the interests of the attorney or firm seeking to withdraw. Buschmeier, 222 Fed.Appx. at 161. All of these factors must be considered in criminal proceedings in light of the Sixth Amendment which guarantees the defendant the right to a speedy trial and the assistance of counsel for his defense. See generally U.S. Const. Amend. VI. Congress more recently has also reinforced the need for a speedy trial in the Speedy Trial Act. 18 U.S.C. §§ 3161 et seq.

It was not until January 20, 2016 that the motion to withdraw was filed. It is now only several weeks before February 16 when reply briefs in support of defendants' pretrial motions are due. Other deadlines are fast approaching. A conference concerning a jury questionnaire is set for April 8 and points for charge from the parties are to be filed in mid-April. The trial is scheduled to begin in approximately three months on May 2.

While in the ordinary case a motion to withdraw at this point would allow for new lawyers to be ready for trial, this is not the ordinary case. As explained earlier, the charges are numerous and complex and the discovery is voluminous. It is unlikely that new counsel at this late date could become sufficiently familiar with the facts

---

2. Rule 83.6 (Rule IV B, ¶ 2) of this Court's Local Civil Rules provides in relevant part: The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to

time by that state court, *except as otherwise provided by specific Rules of this Court* ... (emphasis added)
Rule 1.2 of this Court's Local Criminal Rules makes Local Civil Rule 83.6 applicable in all criminal proceedings.

and the law, comply with the remaining pretrial deadlines, and be prepared to go forward on May 2 even assuming that Fattah would act promptly and could find a lawyer or law firm that would be willing to represent him when he has failed to pay his prior lawyers. If counsel were allowed to withdraw at this stage, Fattah would also run the serious risk that he would be left with no attorney to represent him. It is very late in the game for counsel to be seeking to pull out of this case. *See, e.g., Buschmeier,* 222 Fed.Appx. at 164; *Torres v. Gautsch,* No. 13–1143, 2014 WL 3368782, at *2 (M.D.Pa. July 9, 2014); *Keitt v. Doe,* No. 93–2968, 1993 WL 409166, at *2 (E.D.Pa. Oct. 12, 1993).

At the hearing Fattah expressed complete satisfaction with his present counsel but has not objected to their motion to withdraw. He conceded he has not paid them all that is due but stated he intends to do so at some indeterminate time in the future. He explained to the court that his focus is to raise money for his upcoming campaign for reelection to Congress and not to obtain or spend funds for his defense.

It is public knowledge that Fattah is making an annual salary of $174,100 as a Congressman. He also disclosed that his wife owns a home in Philadelphia and that they jointly own a second home in the Poconos. Significantly, he has not demonstrated that he has insufficient assets or lacks access to funds through borrowing or otherwise to pay his current counsel. He simply has decided to prioritize his resources to his political campaign over his promise to his lawyers. He clearly does not qualify, based on the current record, for a court-appointed lawyer.

Fattah represented to the court that he is seeking a larger firm which will be in a better position to defer receipt of its compensation than are his present lawyers.

He insisted that he is working to obtain new counsel who would be ready for trial on May 2 and who would be able to meet the other pending deadlines. If this were to happen, we would have to evaluate the situation anew. However, as of today, the fact remains that it has not happened.

It must also be remembered that at present there are four additional defendants in this case. Counsel for at least three were in the courtroom. None had any comment about the pending motion. The Government, which has the burden of proof and of scheduling numerous witnesses, urges that the trial commence at the appointed time. Realistically, if the trial does not begin on May 2, it will likely have to be postponed for months. This ship cannot be turned around easily.

Counsel for Fattah seek to withdraw solely because Fattah has not kept his promise to pay their fees. We are always sympathetic to a lawyer when a client has not honored his financial obligations, particularly to a lawyer in a small firm or to a solo practitioner. We appreciate the financial burden counsel face here, although they did receive a substantial initial deposit. The conduct of Fattah in placing his counsel in their present situation seems particularly unfair as he has never represented to the court that he is impecunious or unable to obtain the necessary funds to pay them on time. On the other hand, it is important to reiterate that counsel, when they entered their appearances months ago, were fully cognizant of their professional obligation under Rule 44.1 of the Local Criminal Rules to continue their representation "until final disposition of the case in this Court" as well as the risk of non-payment of their fees and expenses. Only if counsel remain in this case can we insure that Fattah's constitutional right to the assistance of counsel will be fully protected.

We have considered the reasons counsel seek to withdraw, the prejudice to the client and other litigants including the Government, the harm to the administration of justice, and the delay in the resolution of the matter as well as the timing of the pending motion. In the final analysis, the need to prevent undue delay and harm to the administration of justice as well as the need to protect Fattah's constitutional right to the assistance of counsel compel the court to rule against the withdrawal. We are confident that counsel will continue to meet their professional responsibilities as officers of this court as they have up to this point.

Accordingly, the motion of counsel for Fattah to withdraw from their representation of him will be denied.